494          October 16, 2024          No. 732

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of L. D. B.-N.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Appellant,*
*and*

L. D. B.-N.,
*Appellant,*

*v.*

N. B.
and L. N.,
*Respondents.*

Multnomah County Circuit Court
23JU01463; A183087

Michael S. Loy, Judge.

Argued and submitted July 24, 2024.

Inge D. Wells, Assistant Attorney General, argued the cause for appellant Department of Human Services. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Sarah Peterson, Deputy Public Defender, argued the cause for respondent N. B. Also on the brief was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Aron Perez-Selsky filed the brief for appellant L. D. B.-N.

No appearance for respondent L. N.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.*

AOYAGI, P. J.

Affirmed.

_____

\* Egan, J., *vice* Jacquot, J.

**AOYAGI, P. J.**

Child, L, and the Department of Human Services (DHS) appeal a judgment denying DHS's petition to establish a permanent guardianship for L. "The grounds for granting a permanent guardianship are the same as those for termination of parental rights." ORS 419B.365(2). In the guardianship petition, in addition to allegations regarding mother, DHS alleged that father is "unfit by reason of conduct or condition seriously detrimental to the child or ward," ORS 419B.504, and that he "failed or neglected without reasonable and lawful cause to provide for the basic physical and psychological needs of the child or ward for six months prior to the filing of a petition," ORS 419B.506. After a three-day trial at which father failed to personally appear, the juvenile court denied the petition, concluding that DHS had failed to prove its allegations regarding father. The court did not reach the allegations regarding mother, nor did it reach the issue of L's best interests.[1] On appeal, L and DHS assign error to the court's denial of the petition, and they request *de novo* review. As explained below, we decline to conduct *de novo* review, which is dispositive because neither DHS nor L has identified any basis for reversal absent *de novo* review. We therefore affirm.

We begin by addressing two procedural quirks of this case. First, mother questions whether DHS timely filed its notice of appeal, where it did not file it within 30 days of entry of the judgment as required for an initial appeal under ORS 19.255(1). We conclude that DHS's notice of appeal was timely. L filed an initial notice of appeal within the 30 days, and DHS filed its own notice within 10 days of L's filing. DHS's notice was therefore timely under ORS 19.255(3), which provides, "Any other party who has appeared in the action, suit or proceeding, desiring to appeal against the appellant or any other party to the action, suit or proceeding, may serve and file notice of appeal within 10 days after

---

[1] Under ORS 419B.365(4), the juvenile court must "grant a permanent guardianship if it finds by clear and convincing evidence" both that "[t]he grounds cited in the petition are true" and that "[it] is in the best interest of the ward that the parent never have physical custody of the ward but that other parental rights and duties should not be terminated."

the expiration of the time allowed by" ORS 19.255(1). DHS is another party who appeared in the proceeding, so DHS had 10 additional days to appeal, regardless of which party DHS was or is aligned with. *See Crow v. Junior Bootshops*, 241 Or 135, 139, 404 P2d 789 (1965) (concluding that the 10-day provision in an earlier version of the statute before renumbering—which contained similar language to current ORS 19.255(3)—"applies where more than one party appeals," and that the first reference to "'[a]ny other party' means any other than the one who first appeals").

The second procedural quirk relates to father's failure to appear. Despite having been ordered to appear in person, father did not appear at the guardianship trial. When a parent who has been ordered to personally appear for a guardianship proceeding fails to appear, "the court, without further notice and in the parent's absence, may *** grant the guardianship petition ***." ORS 419B.819(7). Before the juvenile court, the parties agreed that, in light of father's failure to appear, DHS's task was to present a *prima facie* case on its allegations against father. DHS sought to do so, but the juvenile court ultimately concluded that DHS's evidence was "insufficient" as to father, and it denied the guardianship petition on that basis.

On appeal, DHS and L request *de novo* review. In doing so, they necessarily assume (as does mother in her answering brief) that the juvenile court weighed DHS's evidence and, acting as factfinder, was unpersuaded that DHS had proved the allegations as to father. That is, DHS and L do not appear to understand the trial court to have concluded, as a legal matter, that the evidence was insufficient, nor do they make any arguments on appeal about the legal sufficiency of the evidence. Because that is how the parties understand the court's ruling, and it is one plausible interpretation of what the court said, we accept that framing of the issue for purposes of appeal.[2]

_____

[2] A different possible interpretation of what the court said is that the court viewed the evidence as insufficient *as a matter of law* to establish DHS's case. That would have implications for the standard of review, as the issue would be purely legal. For purposes of this appeal, we accept the parties' framing of the

We now turn to the dispositive issue on appeal: whether to exercise our discretion to conduct *de novo* review. DHS's arguments to reverse the juvenile court judgment are all premised on our granting *de novo* review. That is, DHS has not developed any argument for reversal in the event that we deny *de novo* review. As for L, her arguments on appeal are limited to the issue of L's best interests, an issue that we would potentially reach only in the event that we granted *de novo* review.[3]

In termination-of-parental-rights proceedings, our review is always *de novo*. ORS 19.415(3)(a). However, in all other equitable proceedings, including this one, we have discretion to "try the cause anew upon the record or make one or more factual findings anew upon the record," ORS 19.415(3)(b), and we exercise that discretion "only in exceptional cases." ORAP 5.40(8)(c). If we do not exercise our discretion to conduct *de novo* review in whole or in part, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

DHS contends that we should exercise *de novo* review because (1) the juvenile court's view of the evidence may have been colored by its expressed view that the ultimate determination of parental unfitness or neglect should bear some relationship to the bases on which the court took dependency jurisdiction, which DHS contends is legally incorrect; (2) the court did not make express findings; and (3) the court's ruling does not comport with the uncontroverted

issue and apply the standard of review that applies to what all parties understand the juvenile court to have done.

[3] Both DHS and L request that, if we disagree with the juvenile court regarding the allegations as to father on *de novo* review, then we proceed to decide on *de novo* review whether DHS proved the allegations as to mother and whether it is in L's best interests to establish a permanent guardianship, rather than remanding for the juvenile court to address those issues, in the interests of L obtaining permanency sooner. Because we deny *de novo* review as to father and affirm the court's ruling as to father, we have no occasion to reach the allegations as to mother or the issue of L's best interests.

evidence in the record. L adopts DHS's arguments for *de novo* review.

Upon consideration, we are unpersuaded to exercise our discretion to conduct *de novo* review. As to DHS's first argument, nothing in the record suggests to us that the juvenile court's view of the evidence was colored by its opinion on an open legal question regarding the relationship between the bases for dependency jurisdiction and the ultimate grounds for finding unfitness or neglect in a termination-of-parental-rights or guardianship proceeding. To the contrary, in announcing its decision, the court specifically stated:

> "And if I had to vote now, I would vote that any petition to establish permanent guardianship would need to be based on the jurisdictional basis for those allegations. *But I don't need to get there because in addressing the merits of the state's allegations contained in the petition for permanent guardianship, I don't believe there's sufficient evidence.*"

(Emphasis added.) Given that statement, and the lack of anything in the record that causes us to believe that the court's view on that issue improperly affected how it viewed the evidence, we reject DHS's first argument.

As to DHS's second argument, it is true that the juvenile court did not make express findings of fact or credibility determinations. But DHS's evidence regarding father was uncontroverted, so no credibility determinations were necessary. Moreover, the court's extended discussion with DHS's counsel, during which the court pointedly noted a variety of gaps in DHS's evidence and theories, gives substantial insight into the court's view of the evidence, notwithstanding the lack of express findings.

As to DHS's third argument—that the court's ruling does not comport with uncontroverted evidence in the record—it is true that DHS's evidence was uncontroverted. However, the court did not disregard that evidence; rather, it found that the evidence did not persuasively prove either that father was unfit under ORS 419B.504 or that father had neglected L within the meaning of ORS 419B.506 during the relevant time period.

Ultimately, we are unpersuaded that this is the type of "exceptional" case that merits *de novo* review.[4] ORAP 5.40(8)(c). Neither DHS nor L has identified any basis for reversal absent *de novo* review. Accordingly, we affirm.

Affirmed.

---

[4] The parties have not made any arguments as to whether, given the similarities (or differences) between termination of parental rights and placement of children in a permanent guardianship, we should (or should not) grant *de novo* review more readily in appeals involving permanent guardianships. *Cf. Dept. of Human Services v. N. S.*, 246 Or App 341, 344, 265 P3d 792 (2011), *rev den*, 351 Or 586 (2012) (considering the differences between durable guardianships, permanent guardianships, and termination in deciding not to grant *de novo* review in a durable-guardianship appeal). That may be because the permanent guardianship was denied in this case. In any event, we do not foreclose consideration of such arguments if raised. Here, either way, we are disinclined to grant *de novo* review in this case.